NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Crim. No. 08-192 (GEB) |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| TANYA RIVERA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**BROWN, Chief District Judge**

This matter comes before the Court upon the motion of Defendant Tanya Rivera ("Defendant" or "Rivera") to withdraw her guilty plea pursuant to Federal Rule of Criminal Procedure 11. [Docket # 151] Plaintiff the United States of America (the "Government") opposes Ms. Rivera's present motion. [# 153] On March 30, 2009, the Court held a hearing on this matter. The Court has considered the parties' submissions and the evidence presented at the hearing. Having done so, the Court will deny Ms. Rivera's motion to withdraw her guilty plea for the reasons expressed below.

**I.    FINDINGS OF FACT[1]**

On July 11, 2008, a federal grand jury indicted eight individual defendants for their alleged involvement in a series of "smash and grab" jewelry store robberies that had occurred

---

[1] After reviewing the parties' written submissions, including Ms. Rivera's certification in support of her present motion, the Court concluded that a hearing was necessary to further develop the record in this case. During the hearing, which took place on March 30, 2009, Ms. Rivera testified that she lied repeatedly under oath during her plea hearing on September 26, 2008. Because there are numerous conflicting facts and assertions in the record, the Court will make findings of fact and credibility determinations in order to decide Ms. Rivera's present motion.

over several years in several states. (Indictment) [# 26] Defendant Tanya Rivera was among those indicted. Specifically, Ms. Rivera was charged with the following three federal crimes: (1) Conspiracy to Commit Robbery Affecting Interstate Commerce in violation of 18 U.S.C. 1951(b)(3); (2) Robbery Affecting Interstate Commerce in violation of 18 U.S.C. §§ 2 and 1951(a); (3) Receipt of Stolen Goods in violation of 18 U.S.C. §§ 2 and 2315. (*Id.*) Subsequently, the United States Attorney for the District of New Jersey (the "U.S. Attorney") obtained a superseding information against Ms. Rivera that added a charge of Misprision of Felony in violation of 18 U.S.C. § 4. (Superseding Information) [# 86] These charges against Ms. Rivera stemmed from her alleged involvement as a "getaway driver" following the robbery of Mayors Jewelers in Buford, Georgia on March 22, 2004. (*Id.* at 7.)

On September 22, 2008, prior to the commencement of a trial on these charges, Ms. Rivera and the U.S. Attorney signed a plea agreement (the "Plea Agreement"). (Plea) [# 90] In the Plea Agreement, Ms. Rivera agreed to plead guilty to a single count of Misprision of Felony in violation of 18 U.S.C. § 4. (*Id.*) In exchange, the U.S. Attorney agreed to dismiss the other charges against Ms. Rivera, and stipulated that pursuant to the relevant sentencing Guidelines, U.S.S.G. §§ 2X4.1 and 2B3.1, the total offense level applicable to Ms. Rivera was 8. (Plea Agreement; Plea Schedule A ¶ 9.) [# 90]

On September 26, 2008, Ms. Rivera appeared before this Court to enter her guilty plea (the "Plea Hearing"). At the Plea Hearing, the Court initially addressed the matter of Ms. Rivera's legal representation. Earlier that week, on September 23, 2008, Ms. Rivera had communicated with the U.S. Attorney and the Court, and expressed dissatisfaction with her then-counsel, Mr. Thomas Moran. The Court instructed Ms. Rivera to appear with Mr. Moran on

September 26, 2008, at which time the Court would address the issue of her legal representation. Therefore, on September 26, 2008, prior to hearing Ms. Rivera's guilty plea, the Court and Ms. Rivera had the following exchange:

> The Court: Okay. Now, you're represented by Mr. Moran. Is that Correct?
>
> Ms. Rivera: Correct.
>
> The Court: You tell me you're satisfied, you've had enough time to discuss this matter with him. Is that true?
>
> Ms. Rivera: Yes.
>
> The Court: Earlier this week you appeared in court and said you were unhappy with your attorney, and you'd like to have the Court appoint a new attorney for you. Why do you now feel that you're satisfied with him?
>
> Ms. Rivera: Well, he has thoroughly explained everything, and I understand everything a lot more, so - -
>
> The Court: So you're satisfied with the present attorney that you've retained?
>
> Ms. Rivera: Yes.
>
> The Court: Okay, and you don't want me to appoint a new attorney to represent you?
>
> Ms. Rivera: Correct.
>
> The Court: Would you like more time to consider this? I can put this off until later or even another day if you'd like.
>
> Ms. Rivera: No, we can proceed.

(Tr. Plea Hr'g at 4-5.) [# 151]   After this exchange, the Plea Hearing continued, and the Court established the following on the record: (1) Ms. Rivera is an English speaking adult with an associate's degree who was not then under the influence of drugs, medication, or alcohol; (2) Ms. Rivera was competent; (3) Ms. Rivera was aware of her right to a jury trial on the charges against

her and that she was waiving that right knowingly and voluntarily with, "a full understanding of the consequences"; (4) Ms. Rivera was aware of the Government's burden of proving the charges against her at a trial; (5) Ms. Rivera understood that by pleading guilty, she would become a convicted felon by her own admission and that, "nothing will remain except for [the Court] to impose sentence upon [her]"; (6) Ms. Rivera could be sentenced to a maximum of three years in prison and fined. (*Id.* at 5-9.) After these facts were established, the Court and Ms. Rivera had the following exchange:

> The Court: Has anybody made any prediction or promise as to what sentence I'll actually impose on you?
>
> Ms. Rivera: No.
>
> The Court: No one knows what sentence I'll actually impose. I don't even know until I hear from you and your attorney and the government at the time of sentencing after having read the pre-sentence report. Do you understand that?
>
> Ms. Rivera: Yes.
>
> . . . .
>
> The Court: You tell me you're pleading guilty, because you're, in fact, guilty and for no other reason, and no one's made any threats or promises to cause you to plead guilty. Is that correct?
>
> Ms. Rivera: Correct.
>
> The Court: And you'll have no right to withdraw your plea on the grounds of anyone's [prediction] as to guideline range or expectation of sentence proves inaccurate. Do you understand that?
>
> Ms. Rivera: Yes.

(*Id.* at 9, 10.) After this exchange, the Court addressed the specific provisions of the Plea Agreement signed by Ms. Rivera and the U.S. Attorney on September 22, 2008. The Court and

Ms. Rivera had the following exchange:

> The Court: All right. You tell me there's a plea agreement in this case, and you've given me a letter to your attorney, Mr. Moran, dated [September 19, 2008] signed by Mr. Herring on behalf of the United States, and it says, "I've received this letter from my attorney, Thomas J. Moran, Esquire. I've read it and understand it fully. I hereby accept the terms and conditions set forth in this letter and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made, unless set forth in writing and signed by the parties." Did you sign that statement?
>
> Ms. Rivera: Yes.
>
> The Court: Is it true?
>
> Ms. Rivera: Yes.
>
> The Court: All right. By the way, did anybody tell you to lie to me today?
>
> Ms. Rivera: No.

(*Id.* at 12.) After this exchange, Scott McBride, the Assistant United States Attorney representing the Government, summarized the terms of the Plea Agreement. In doing so, Mr. McBride noted that: (1) the Government predicted the applicable Guidelines range for Ms. Rivera to be 0-6; (2) the Government would recommend a sentence that is within that Guideline range; (3) the Government had predicted that the Court will impose a probationary sentence; (4) the Government would not oppose a non-incarceratory sentence. (*Id.* at 13.) The Government's agreement to not oppose a non-incarceratory sentence was understood by the parties, but not memorialized in the Plea Agreement. (*Id.*)

Following the summary of the Plea Agreement by counsel for the parties, the following final exchange took place:

> The Court: All right. Defendant is competent. She has a full understanding of the

5

charges and penalties. The plea is free, knowing, and voluntary. But before I can accept it, I must determine a factual basis for it. Who wishes to examine the defendant as to a factual basis?

Mr. McBride: I will, if you'd like, Your Honor?

The Court: Proceed.

Mr. McBride: [Ms. Rivera] on or before March 22, 2004, did you, William Valentin, and others drive your Acura and another vehicle to the Mall of Georgia and eventually park near a Circuit City in that mall?

Ms. Rivera: Yes.

Mr. McBride: Did you wait in your Acura while William Valentin stole a minivan from the parking lot?

Ms. Rivera: Yes.

Mr. McBride: While you waited, did the others in the group change into white personal protection suits or chemical suits or painter suits?

Ms. Rivera: Yes.

Mr. McBride: When William Valentin returned with the stolen minivan, did the others get into the minivan?

Ms. Rivera: Yes.

Mr. McBride: Did William Valentin then drive the minivan toward the mall entrance?

Ms. Rivera: Yes.

Mr. McBride: Minutes later, did William Valentin and the others return to the minivan?

Ms. Rivera: Yes.

Mr. McBride: Did William Valentin place bags of stolen watches in your trunk?

Ms. Rivera: Yes.

>Mr. McBride: Did you and William Valentin then drive away in your Acura?
>
>Ms. Rivera: Yes.
>
>Mr. McBride: Were you aware that William Valentin and the others had just committed a robbery of a jewelry store?
>
>Ms. Rivera: Yes.
>
>Mr. McBride: Did you drive away to New Jersey in order to allude capture by the police and to conceal William Valentin's crime from the police?
>
>Ms. Rivera: Yes.
>
>Mr. McBride: Did you ever report this crime to a federal judge or any federal authority?
>
>Ms. Rivera: No.
>
>Mr. McBride: Are you guilty of misprision of this felony robbery?
>
>Ms. Rivera: Yes.
>
>Mr. McBride: The United States is satisfied with the factual basis, Your Honor. We also represent that were this matter to go to trial, we could prove each and every element of the offense beyond a reasonable doubt.
>
>The Court: Very well.  Do you still wish to plead guilty?
>
>Ms. Rivera: Yes.
>
>The Court: Factual basis is established.  Report to Probation to begin the pre-sentence investigation.  Sentencing is set for [January 5, 2009 at 1 p.m.].

(*Id.* at 14-16.)

Pursuant to the Court's instructions, the United States Probation Office prepared a Presentence Investigation Report (the "P.I. Report") concerning Ms. Rivera on November 12, 2008.  (P.I. Report)  The United States Probation Office is a federal entity that is separate and distinct from the U.S. Attorney, and reports directly to the Court.  The P.I. Report is prepared at

7

the direction of the Court, and the information contained in the P.I. Report is considered by the Court along with other information in the record when determining a defendant's sentence. In Ms. Rivera's case, a U.S. Probation officer interviewed her during the preparation of the P.I. Report. In the section of the P.I. Report entitled, "**Adjustment for Acceptance of Responsibility**", the interview between Ms. Rivera and the U.S. Probation officer is summarized as follows:

> ¶ 105. The defendant was interviewed without the presence of defense counsel. Rivera provided the following information regarding her involvement in the case. The defendant advised that she was involved in a consentual relationship with co-defendant, William Valentin, for approximately two years. After being involved in a relationship with Valentin, the defendant learned that he had been released from serving a custodial term at a state institution. Rivera advised that Valentin was intimidating and the type of individual who "would put fear in peoples heart." She stated that she was fearful to tell anyone what occurred. Reportedly, Valentin asked her to drive him to Georgia (since she had a driver's license and could rent vehicles in her name.) On the date of the robbery in Georgia, he asked her to drive him to the mall and wait in the vehicle since he would return promptly. The defendant advised that as of the time she was waiting in the car, she was unaware of what Valentin or the others were going to do. Hence she waited in the car and until Valentin returned alone and told her to drive to New Jersey. Once they were on the way to New Jersey, he told her about the smash and grab.
>
> ¶ 106. The probation officer questioned Rivera as to what transpired once she and Valentin arrived to New Jersey. However, she advised that she could not remember what he told her once they were in New Jersey. Rivera emphasized that she was fearful of what would happen if Valentin were to learn that she told law enforcement personnel of his illegal activities.
>
> ¶ 107. Tanya Rivera stated that she voluntarily plead guilty to the instant offense because she was in fact guilty as charged. In view of the foregoing statement and the defendant['s] timely plea of guilty, she appears to meet the criteria for acceptance of responsibility, pursuant to U.S.S.G. 3E1.1.

(P.I. Report at 24.) After conducting the interview with Ms. Rivera, and considering other relevant information including the details of the robbery at issue, the U.S. Probation officer

concluded:

> ¶ 107.  The probation office does not concur with the stipulations set forth in the plea agreement.  With regard to the March 22, 2004 robbery in Georgia, a sledge hammer was used at the [robbery of Mayors Jewelers in Buford, Georgia on March 22, 2004].  Since the defendant drove the getaway car, her criminal behavior is considered relevant conduct.  The provisions of U.S.S.G. § 2B3.1(b)(2)(D) have been applied to his case resulting in a Total Offense Level of 12 rather than 8 as noted in the defendant's plea agreement.

> ¶ 167.  The probation officer has not identified any mitigating or aggravating circumstances concerning the offense or the offender which would warrant a departure from the guideline range.

(*Id.* at 31, 34.)

On December 10, 2008, Ms. Rivera's then-counsel Thomas Moran submitted a letter to the Court that expressed Ms. Rivera's disagreement with the elevated offense level recommended in the P.I. Report, and urged the Court to apply the lower offense level stipulated in the Plea Agreement.  (Moran Letter 12/10/08) [# 120]  On January 5, 2009, the date on which Ms. Rivera was scheduled to be sentenced pursuant to her guilty plea, the Court instead adjourned sentence and allowed Ms. Rivera to substitute Mr. Franz Cobos to represent her in place of Mr. Moran.  [# 127]  Subsequently, on February 13, 2009, current counsel filed the present motion to withdraw Ms. Rivera's guilty plea.  [# 151]  The Government filed opposition papers on February 19, 2009. [# 153]

In her moving brief, counsel argued that she should be allowed to withdraw her plea for the following two reasons: (1) Ms. Rivera's guilty plea was not made knowingly and voluntarily and with Ms. Rivera's "intelligent understanding as to the consequences bargained for in the [Plea Agreement]"; and (2) the U.S. Attorney has breached the Plea Agreement.  (Pl.'s Mot. Br.) [# 151]  In support of her motion, Ms. Rivera submitted a certification in which she stated, in

9

sum, that she plead guilty on September 26, 2008, because, "I felt compelled to do so by my attorney . . . ." (*Id.* at ¶ 2.)

In its opposition brief, the Government argued that Ms. Rivera must not be allowed to withdraw her guilty plea because she has not satisfied the three factors announced by the United States Court of Appeals for the Third Circuit in *United States v. Jones*, 336 F. 3d 245, 252 (3d Cir. 2003). (Gov. Opp'n Br.) [# 153] Specifically, the Government asserted that: (1) Ms. Rivera had not sufficiently asserted that she is innocent of Misprision of Felony in violation of 18 U.S.C. § 4; (2) Ms. Rivera had not provided sufficiently strong reasons for withdrawing her guilty plea; and (3) the Government would be severely prejudiced if Ms. Rivera were allowed to withdraw her guilty plea. (*Id.*) With specific regard to the Government's assertion that it would be severely prejudiced if Ms. Rivera were allowed to withdraw her guilty plea, the Government expressly states in its moving brief that its sole witness against Ms. Rivera - a Mr. Jonathan Alvarado - has absconded and is currently a fugitive. (*Id.* at 11.) As such, were Ms. Rivera to withdraw her guilty plea the Government, "would be unable to prosecute [Ms. Rivera], which would result in dismissal." (*Id.*)

On March 30, 2009, the parties appeared before the Court to be heard on Ms. Rivera's present motion. (Tr. 3/30/09 Hr'g.) At the outset, the Court stated that the certification Ms. Rivera had submitted with her moving papers was insufficient to support Ms. Rivera's motion in light of the Plea Hearing transcript. (*Id.* at 5.) Specifically, the Court stated that because the instant matter involved an individual stating that her previous testimony under oath was false, the Court had to make a credibility determination in order to rule. (*Id.* at 4.) While the Court expressly noted that Ms. Rivera was not compelled to testify, Ms. Rivera elected to take the stand

10

on March 30, 2008.  (*Id.* at 5-6.)

After being sworn, Ms. Rivera was questioned by both her attorney Mr. Cobos, and by Assistant U.S. Attorney Scott McBride.  In her responses to the questions put forth by Mr. Cobos and Mr. McBride, Ms. Rivera testified, in pertinent part: (1) that she is not guilty of Misprision of Felony in violation of 18 U.S.C. § 4; (2) that she was "pressured" into signing the Plea Agreement by her former counsel, Mr. Moran; (3) that she repeatedly lied to the Court at the September 26, 2008 Plea Hearing because she was told to do so by Mr. Moran, and because she felt, "overwhelmed." (*Id.* at 6-55.)

Following questioning by Mr. Cobos and Mr. McBride, the Court addressed Ms. Rivera directly in an effort to clarify exactly which statements made by Ms. Rivera during the September 26, 2008 Plea Hearing she now asserted were false.  In response to the Court's questioning, Ms. Rivera testified that the following statements made by her during the plea colloquy were lies: (1) that Ms. Rivera was satisfied with Mr. Moran's representation, and that she'd had enough time to discuss the Plea Agreement with him; (2) that Ms. Rivera was satisfied with Mr. Moran because he, "has thoroughly explained everything, and [she] understand[s] everything a lot more . . . ."; (3) that on September 26, 2008, Ms. Rivera did not want the Court to appoint a new attorney to replace Mr. Moran; (4) that on September 26, 2008, Ms. Rivera did not want more time to consider the Plea Agreement, or have the Plea Hearing rescheduled; (5) that Ms. Rivera wished to waive indictment and plead guilty; (6) that Ms. Rivera's decision to waive indictment and plead guilty was made knowingly and voluntarily, and that no threats or promises had been made that caused her to waive indictment; (7) that Ms. Rivera wished to plead guilty to Misprision of Felony in violation of 18 U.S.C. § 4; (8) that nobody had made any predictions or promises to

Ms. Rivera regarding the sentence the Court would impose on her; (9) that Ms. Rivera was pleading guilty because she was, in fact, guilty; (10) that Ms. Rivera understood parole had been abolished and that if sentenced to prison, she would not be released on parole; (11) that Ms. Rivera had read and fully understood the terms of the Plea Agreement; (12) that nobody had told Ms. Rivera to lie to the Court; and (13) that Ms. Rivera understood that in exchange for her guilty plea, the Government would recommend a sentence within a Guideline range of 0-6, and that the Government would not oppose a non-encarceratory sentence.  (Tr. 3/30/09 Hr'g. at 55-72.)

In addition to these alleged lies, Ms. Rivera testified that her answers to Mr. McBride's questions that established a factual basis for the guilty plea were also untrue.  (*See* McBride/Rivera Questions & Answers at page 6,7, *infra*.)  Specifically, Ms. Rivera testified that all of her answers to Mr. McBride's factual questions were lies, except the following: (1) that Ms. Rivera had driven from New Jersey to Georgia to meet William Valentin on or before March 22, 2004; (2) that Ms. Rivera and William Valentin drove away from the Georgia mall in her Acura on March 22, 2004; and (3) that Ms. Rivera never told a federal authority about the March 22, 2004 robbery.  (Tr. 3/30/09 Hr'g. at 72-76.)

Prior to the conclusion of the hearing on March 30, 2009, both Mr. Cobos and Mr. McBride summarized their arguments.  In support of Ms. Rivera's motion, Mr. Cobos asserted that Ms. Rivera should be allowed to withdraw her guilty plea because she was "pressured" by her then-counsel into signing the Plea Agreement and was emotionally "overwhelmed."  (*Id.* at 86-90.)  Further, Mr. Cobos posited that Ms. Rivera's testimony during the March 30, 2009 hearing had been "sincere" and "straightforward," and again stated that Ms. Rivera was innocent

of the charges against her. (*Id.* at 87.) In response, Mr. McBride argued that Ms. Rivera's testimony on March 30, 2009, was simply not credible for a variety of reasons, and that Ms. Rivera had fallen short of satisfying the legal standard required to withdraw her plea. (*Id.* at 90-93.)

## II.     CREDIBILITY DETERMINATIONS

The findings of fact set forth above are based upon the written submissions of the parties and the evidence produced during the proceedings before the Court on September 26, 2008, and March 30, 2009. The Court has had the opportunity to evaluate all the evidence and observe Ms. Rivera's demeanor as she testified on two occasions. Further, the Court has considered Ms. Rivera's respective interests and the extent to which her testimony has been supported or contradicted by other credible evidence. Having done so, the Court finds Ms. Rivera's testimony during the September 26, 2008 Plea Hearing credible, and her testimony during the March 30, 2009 hearing not credible for the reasons that follow.

On March 30, 2009, Ms. Rivera testified under oath that she lied to the Court no less than twenty times during the September 26, 2008 Plea Hearing. Both in her written submissions to the Court, and during her sworn testimony on March 30, 2009, Ms. Rivera attempted to explain her alleged lies by claiming that her then-counsel Mr. Moran told her to lie and "pressured" her into taking the Plea Agreement. Ms. Rivera also claimed that she was "overwhelmed" by the situation. Contrary to Ms. Rivera's assertions, however, the Court's review of the Plea Hearing transcript paired with certain undisputed facts militates the conclusion that the explanations given by Ms. Rivera on March 30, 2009, are not credible.

On September 23, 2008, several days prior to the Plea Hearing, Ms. Rivera expressed her

13

dissatisfaction with Mr. Moran's representation to both the U.S. Attorney and the Court.  In response to Ms. Rivera's comments, the Court took pains to address Ms. Rivera's concerns regarding Mr. Moran at the Plea Hearing prior to accepting Ms. Rivera's guilty plea.  The transcript of the September 26, 2008 Plea Hearing plainly shows that the Court gave Ms. Rivera opportunities to consult further with Mr. Moran, or to discharge Mr. Moran, obtain new counsel, and postpone the Plea Hearing.  Ms. Rivera declined each opportunity.  Instead, Ms. Rivera expressly stated that she was comfortable with Mr. Moran, and that Mr. Moran had thoroughly explained the situation.  Thus, viewing the record as a whole, the Court finds that Ms. Rivera's explanations for her contention that she lied under oath more than twenty times on September 26, 2008 are not credible.

Furthermore, the occurrence of two events since Ms. Rivera plead guilty have created a strong interest for Ms. Rivera to attempt to withdraw her guilty plea, and therefore a strong interest for her to claim that she lied during the September 26, 2008 Plea Hearing.  First, as the Government noted in both its opposition brief and at the March 30, 2009 hearing, Mr. Jonathan Alvarado, the only Government witness against Ms. Rivera, has subsequently absconded and is currently a fugitive from justice. (Gov. Opp'n Br. at 11; Tr. 3/30/09 Hr'g. at 90.) [# 153]  As a result, if Ms. Rivera's guilty plea is withdrawn, the Government states that it will have to dismiss the charges against Ms. Rivera.  (*Id.*)  Critically, Mr. Alvarado absconded after Ms. Rivera pled guilty on September 26, 2008. (Gov. Opp'n Br. at 11.) [# 153]  Secondly, Ms. Rivera's instant motion comes after the U.S. Probation Office issued the P.I. Report that recommended the application of a Guideline offense level of twelve to Ms. Rivera. (P.I. Report at 31, 34.)  This recommendation doubles the offense level stipulated by the U.S. Attorney in the Plea Agreement.

14

The Court concludes that these two events have created a strong interest for Ms. Rivera to attempt to withdraw her guilty plea, and therefore a strong interest for her to claim that she lied during the September 26, 2008 Plea Hearing.

For these reasons, the Court concludes that Ms. Rivera's testimony during the September 26, 2008 Plea Hearing is credible, and that her testimony on March 30, 2009 is not credible.

### III.    CONCLUSIONS OF LAW

In her present motion, Ms. Rivera argues that she should be allowed to withdraw her guilty plea for the following two reasons: (1) Ms. Rivera's guilty plea was not made knowingly and voluntarily and with Ms. Rivera's "intelligent understanding as to the consequences bargained for in the [Plea Agreement]"; and (2) the U.S. Attorney has breached the Plea Agreement.  (Pl.'s Mot. Br.) [# 151]  The Government opposes Ms. Rivera's motion, and argues that Ms. Rivera should not be allowed to withdraw her guilty plea because she has not satisfied the three factors announced by the United States Court of Appeals for the Third Circuit in *United States v. Jones*, 336 F. 3d 245, 252 (3d Cir. 2003).  (Gov. Opp'n Br.) [# 153]  The Court agrees with the Government that Ms. Rivera's present motion is insufficient under the *Jones* analysis, and therefore must be denied.

Ms. Rivera filed the present motion pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B) which states that:

> A defendant may withdraw a plea of guilty . . . after the court accepts the plea but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal.

In *United States v. Jones*, 336 F. 3d 245, 252 (3d Cir. 2003), the Third Circuit established the following three factor analysis:

> A district court must consider three factors when evaluating a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal.

(internal citations omitted). The court in *Jones* noted that, "The burden of demonstrating a "fair and just" reason falls on the defendant, and that burden is substantial." *Id.* Further, "'A shift in defense tactic, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty.'" *Id.* (quoting *United States v. Brown*, 250 F.3d 811, 815 (3d. Cir. 2001). Applying this three factor analysis to the present case, this Court concludes, as did the court in *Jones*, that withdrawal of the guilty plea is not appropriate.

The first *Jones* factor asks whether Ms. Rivera has asserted her innocence. With regard to this first factor, the court in *Jones* noted that mere bald assertions of innocence form an insufficient basis to withdraw a guilty plea. *Jones* 366F. 3d at 252. Rather, to satisfy her burden, Ms. Rivera must, "'not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial.'" *Id.* (quoting *United States v. Jones*, 979 F.2d 317, 318 (3d. Cir. 1992)). In *Jones*, the court noted that the defendant had failed to properly assert his innocence for the following two reasons: (1) the defendant had failed to support his innocence by placing facts in the record; and (2) the defendant had failed to "provide a convincing reason" why his "position had changed so markedly" between the plea hearing and the defendant's

16

subsequent motion to withdraw his guilty plea. *Id.* At 253.

In this case, the Court concludes that Ms. Rivera has not sufficiently asserted that she is innocent of Misprision of Felony in violation of 18 U.S.C. § 4. The Court has exhaustively detailed Ms. Rivera's express admission of guilt during the September 26, 2008 Plea Hearing. Ms. Rivera now seeks to recant this express admission. Yet, the new "facts" Ms. Rivera offers into evidence are, in sum, that she lied to the Court over twenty times during the Plea Hearing because: (1) Mr. Moran told her to do so; (2) Ms. Rivera felt "pressured" by Mr. Moran; and (3) Ms. Rivera felt "overwhelmed" by the situation. As noted above, however, the Court finds Ms. Rivera's attempt to reconcile her conflicting testimony not credible. (*See* Section II, above.) Conversely, the Court finds Ms. Rivera's unequivocal admission of guilt to Misprision of Felony at the Plea Hearing credible. (*Id.*) In light of those findings, the record in this case indicates that Ms. Rivera has provided nothing more than a "bald assertion" of innocence, which is unsupported by any credible facts, and has not been sufficiently reconciled with her testimony at the Plea Hearing. As such, she has failed to satisfy the first element of the *Jones* analysis.

The second *Jones* factor considers the strength of Ms. Rivera's reasons for withdrawing her plea. In her moving brief, Ms. Rivera argues that she should be allowed to withdraw her plea for the following two reasons: (1) Ms. Rivera's guilty plea was not made knowingly and voluntarily and with Ms. Rivera's "intelligent understanding as to the consequences bargained for in the [Plea Agreement]"; and (2) the U.S. Attorney has breached the Plea Agreement. (Pl.'s Mot. Br.) [# 151]

The Court concludes that Ms. Rivera's first reason – that she did not knowingly

17

and voluntarily plead guilty – fails because it is contradicted by Ms. Rivera's credible testimony at the Plea Hearing. Prior to accepting Ms. Rivera's guilty plea on September 26, 2008, the Court recited an extensive plea colloquy that specifically sought to ensure that Ms. Rivera's guilty plea was given knowingly and voluntarily. (*See* Section I, pp. 3-5, above.) Unfailingly, Ms. Rivera responded to the Court's inquiries in the affirmative, and clearly expressed her understanding of the proceedings. As a result, the Court concluded at the Plea Hearing that Ms. Rivera, "has a full understanding of the charges and penalties. The plea is free, knowing, and voluntary." (Tr. Plea Hr'g at 4-5.) [# 151] As noted above, the Court finds that Ms. Rivera has submitted no credible evidence that undermines the veracity of the conclusions made by the Court at the Plea Hearing. Ms. Rivera's claim that she did not knowingly and voluntarily plead guilty is therefore unavailing.

      The Court concludes that Ms. Rivera's second reason – that the U.S. Attorney has breached the Plea Agreement – fails as a matter of law. In exchange for Ms. Rivera's guilty plea, the record establishes that the Government agreed to do three things: (1) dismiss the remaining charges against Ms. Rivera; (2) recommend that the Court sentence Ms. Rivera consistent with a certain stipulated Guideline range; and (3) not oppose the Court's potential imposition of a non-incarceratory sentence on Ms. Rivera. (Plea Agreement; Tr. Plea Hr'g at 12-13.) [# 151] The record in this case is devoid of any evidence that the Government has failed to perform these obligations. That is understandable, as the Government has not yet had the opportunity to perform or not perform its obligations under the Plea Agreement, because Ms. Rivera has not yet been

sentenced. The Court therefore concludes that Ms. Rivera's contention that the Government has breached the Plea Agreement fails as a matter of law. In light of that conclusion, Ms. Rivera's second reason why she should be allowed to withdraw her guilty plea is also unavailing. As such, Ms. Rivera has put forth no legitimate "fair and just" reason why her motion should be granted.

The third *Jones* factor considers whether the Government will be prejudiced if Ms. Rivera is allowed to withdraw her guilty plea. The Court concludes that in this case, the Government will be severely prejudiced if Ms. Rivera were allowed to withdraw her guilty plea. As noted above, the Government flatly asserts that its only witness against Ms. Rivera has absconded, and that if Ms. Rivera's guilty plea is withdrawn, the Government will be compelled to dismiss the charges against Ms. Rivera. (Gov. Opp'n Br. at 11; Tr. 3/30/09 Hr'g. at 90.) [# 153] It is difficult to envision a situation in which the Government would be more severely prejudiced if a defendant is allowed to withdraw a guilty plea.

In sum, the Court has considered all of the evidence in this case, made credibility determinations, and applied the precedent established by the Third Circuit in *United States v. Jones*, 336 F. 3d 245, 252 (3d Cir. 2003). Having done so, the Court concludes that Ms. Rivera has failed to satisfy the first two *Jones* factors, and that the Government has established that it would be severely prejudiced if Ms. Rivera's is allowed to withdraw her guilty plea.

IV. **CONCLUSION**

As such, for the reasons noted above, Ms. Rivera's present motion to withdraw

the guilty plea she entered on September 26, 2008 will be DENIED.  [# 151]

Furthermore, in light of Ms. Rivera's present motion, her testimony at the March 30, 2009 hearing, and the Court's decision today, the Court will instruct the United States Probation Office to submit a revised Presentence Investigation Report for Ms. Rivera.  An appropriate form of order accompanies this memorandum opinion.

Dated:  April 27, 2009

                                                            /s/ Garrett E. Brown, Jr.
                                              GARRETT E. BROWN, JR., U.S.D.J.